You may proceed. Thank you. Again, I'm Julianne Ehrengarten here from Maringear on behalf of OGT. It's nice to see you again this morning. So our second issue before you today on the same case is our attorneys' fee, our application for attorneys' fees to the district court, which was denied by the court under the analysis that the statute does not provide attorneys' fees in the circumstance that we have found ourselves here. Specifically, that circumstance is that OGT brought a quiet title action to attempt to clear John Karr's lien on the Nessun II oil pipeline project and was the party for whom judgment was entered on that issue. The attorneys' fee statute that is specific to the pipeline lien chapter in the North Dakota Century Code states that in any action brought to enforce a lien prescribed by this chapter, the party… Why don't you stop there? I'm sorry. Do you think that's a precondition to all the rest of it, that it must be an action to enforce this kind of oil pipeline lien? I believe that's what that says. Okay. Doesn't that kill you off the bat? I disagree. Well, but tell me why that isn't a condition. I know you disagree, but tell me why that isn't a condition to all the rest of the statute. First of all, the precondition to the application of this is it's got to be a lawsuit to enforce this lien. Correct. You agree with that? I do agree with that. This lawsuit is not that kind of lawsuit. Isn't it a declaratory judgment? And the lien's not really being enforced? Don't you have to enforce this by separate action in state court? Well, we did initially serve the complaint to be filed in district court and it was removed to federal court. Yeah, but you don't want to enforce the lien. You want to defeat the lien. Well, and this is where we've encountered our issue with the district court as well. The word the statute uses is not foreclosed. The word the statute uses is enforce. And enforce is a broader term than foreclosure. So rather than only permitting attorney's fees in a circumstance where the lien claimant has chosen to foreclose the lien, the statute permits any party for whom judgment is entered in any action to enforce the lien, including a quiet title action where we have sought to have the lien declared invalid under the law. And we know this because the definition of the word enforce says to bring into compliance with the law. Wait, what are you quoting for the definition of enforce? I believe it's Black Flaw Dictator. Okay, before you go there, go to the North Dakota, this very statute. Okay. You know it has the word enforce in two or three other sections here. Yes. Okay, what do they, you know, the civil action, the limitations one, what does that tell us? Because it says a lien may be enforced by civil action two years after time. And there's another place they say that a judgment is rendered in favor of any person to enforce the lien. What do you make of the use of the term enforce in other sections of this very law? I believe that, and unfortunately I don't have those specific sections right in front of me, but I am familiar with them. The section about the time to enforce the lien, the two-year period, the two-year period is set for, and this is what you want me to say, is set for foreclosure. Right. It puts a deadline on the lien claimant's time to foreclose the lien. That doesn't preclude another party, you know, whether it's the property holder or another party responsible for clearing all liens on a project, from also seeking to enforce the lien within that two-year period. It does sound like the other sections treat foreclose as synonymous with enforce. You know, I understand that that's the – You think it has a different meaning in this section. I believe that enforcement is a broader term in this section, and I think that's true because, you know, these projects are very large. They're very expensive. They can tie up a lot of money when there's a lien on a project like this, and there's no mechanism, unlike the construction lien statute in North Dakota, there's no mechanism for the property owner to force an action. Isn't the fair characterization of your lawsuit, it's an action to quiet title and get a declaratory judgment? Yes, to enforce the lien, bringing it in compliance with the law, to invalidate the lien. Let's take a different angle. If you look at Section 19, it says, all cases, leaving out a little language, to enforce a lien, the pipeline must be ordered to be sold. So let's assume you had lost the quiet title action. Yes. Would that allow the court to sell the pipeline without the owner even being a party? No. I believe that if we had lost the action. That would be sort of an absurd result, right? Right. If we had lost the action. So isn't that more consistent with the term enforcing the lien being exactly what Judge Benton has been getting at? You know, I think it's sort of a complicated circumstance. You know, if, I mean, let me put it this way. If the statute means foreclose when it says enforce, then I can't win. And so, you know, that's just the reality of the circumstance that we're in here. And so our perspective and our argument is that the statute does not require the action to be a foreclosure. It only requires that the action seeks to determine whether the lien is legally enforceable. You know, if we had lost this action, Mr. Carr would, you know, take the federal court's ruling declaring that he is entitled to a lien and go have to get it determined whether it's. Then he would have to file a suit to enforce the lien. He would have to file a suit to foreclose the lien. And as part of that suit, the part where we determine whether he's even entitled to the lien would be truncated because it would be race judicata and that issue would have been resolved by the earlier decision. But he would still have to seek, he would still have to bring an action to foreclose the lien in a separate action because he chose not to counterclaim for foreclosure in this action. And we don't have any control over that. You know, the problem with interpreting the statute as equating enforce with foreclosure without using the term foreclosure is that, I mean, it's the same as if the statute used the word foreclosure. It would give the lien claimant all of the power in the relationship regarding the lien and it would give the property owner no ability to sort of clear this issue up and also. Counsel, is that for the legislature? The legislature in some of these liens gives great power to one party, typically the worker, typically the employee, and no power sometimes to the other side. A huge project could be tied up for some, in other states, I'm not sure about North Dakota, can be tied up by a simple materialman's lien for a long time. Now, there are ways to bond and pay it off and yada, yada, yada. But theoretically, that's for the legislature to say one worker's claim that they should have got time and a half overtime or something can stop this huge project. Well, that gets into the issue of whether the statute even permits an employee to claim a lien. You know, our argument on that is that the employee has all sorts of other avenues to pursue. The fact that the statute does not permit a lien to an employee doesn't eliminate their right to pursue other avenues to recoup lost income or something like that. You have some very good policy arguments, but aren't they for the legislature? Well, you know, as far as the policy arguments go, you may be right. They may be better addressed to the legislature, but they still help understand why the statute is constructed the way that it is. And specifically, when you look at it in comparison to North Dakota's construction lien statute, which has very different language regarding the attorney's fees and the rights of property owners to pursue the lien claimant to foreclose the lien to essentially speed along the process, to say that that is not going to exist in the pipeline lien statute, that we're going to interpret the statute to say that if you want to recoup your hundreds of thousands of dollars in attorney's fees spent fighting this, you know, clearing this lien because you have to in order to release the funds that are owed to you, that you can never recoup your attorney's fees, even though the statute is not written in such a way that precludes you from doing so. Hypothetically speaking, if you were to lose in the first case, would this appeal be moot? Hypothetically speaking, I believe it would. Unless you have any more questions, I'd like to reserve the remainder of my time. Thank you. May it please the court, your honors. Again, my name is Asa Burke, and this time I'm here on behalf of the appellee, John Carr, in the attorney's fees issue. It appears that the court is very familiar with my arguments. So I'm not sure how much more I can really add to this, other than to say that this is not an action to enforce a lien, and the statute specifically requires an action to enforce a lien before attorney's fees are available. As the court acknowledged, if this were to be truly an action to enforce a lien, as OGT argues, it would have to be an action to enforce a lien regardless of whether OGT wins or loses. Had Carr won on this issue, he would not be able to turn around and have that property sold. He would need a separate action, and that would be the action to enforce the lien. So that would be a whole new issue, and the issue would not be resolved. And further, because the enabled parties, the owners of the property, were not parties, there may still be issues of the viability, the legitimacy, all that stuff would still be at risk. And further, as the court acknowledged in 35-24-18, in all cases, that's the other use of the word, an action to enforce a lien, and that acknowledges that when a party gets a judgment in their favor in an action to enforce a lien, the property must be sold. It's not discretionary. The court has no... They can't determine whether or not to do it. It must be done. And that's clearly an absurd result and something that OGT wouldn't have wanted in this case. So this cannot be an action to enforce a lien. I guess the only other real issue we need to get into, I guess, is the policy arguments that OGT makes. And I believe that they are incorrectly looking at the construction lien statutes and the pipeline construction lien statutes. There are a number of similarities. They have some of the same goals, but they are not the same statutes. They're different chapters. They cover different properties, different parties. They have different end goals, different procedures, and therefore it should come as no surprise that there will be different results. For one example, they mentioned that there's no way that a property owner can force the lien claimant to bring an action within the statutory period so they can recover their fees. That is true, but there are other ways that they can get that lien off in advance. One is by bonding it off. They can put the money into the quarter with the recorder, rather, and give notice, and then the lien goes away and they can proceed as they see fit. The downside to that for the owner is that in doing so they lose the right to get their attorney's fees. That's part of the statute. The lien claimant can still get the attorney's fees. The owner is out of luck. Another way that the attorney's fees gets thrown out is if the owner, 10 days before trial, so well after all the discovery, well after most of the prep, well after most of the expenses are incurred, if they pay that money into the court, the full amount,  so it should come as no surprise that attorney's fees are not granted in every case. It's only those specific ones where it gets a trial under those circumstances. Another difference is the three-year lien versus the two-year lien in pipeline liens. And then I would point to the general American rule. Every party is required to pay their own fees, including attorney's fees, in the absence of a statutory contractual arrangement. To the contrary, the only contract here is that one-page agreement that was referenced in the previous one. There's no provisions regarding attorney's fees, so that leaves them with just Section 3524.19, which requires, again, an action to enforce the lien. Are there any questions? Nothing further. Very well. Thank you. Thank you. Any rebuttal, Ms. Nierengarten? I don't have a lot of rebuttal in response to that. I'm happy to answer more questions if you have any. But I would like to point out two things. One, the argument that OGT could or should have done something else to deal with this lien issue, whether it was bonding the amount or waiting until 10 days before trial and depositing it in the court, was not raised below. But it also is sort of irrelevant in terms of the ‑‑ not irrelevant, but it's a little bit more complicated than just depositing than just bonding the amount, because under the statute you have to bond twice the amount. And Mr. Carr has claimed a $1.3 million lien on this project, which means that OGT would have had to tie up $2.6 million to bond it. And as Mr. Burke pointed out, we would still lose the opportunity to collect fees on that. Now, he also stated that if Mr. Carr won in the district court, this action would not be to enforce because he still needs to foreclose. I think that, you know, that's an interesting way of sort of separating the two types of actions, because it would have still been an action to enforce. It just would have been that the other party was the prevailing party. And, yes, he would have had to go then attempt to foreclose his lien and have the value of the lien determined, but he would not have had to re-litigate or otherwise seek to enforce the lien as far as its validity, as far as his entitlement to the lien. So I'm not sure if you have any more questions. I just wanted to make a couple of quick statements. Thank you. Very none. Thank you. Court appreciates your...